Mr. Justice MacArthur
delivered the opinion of the court:
Two terms have elapsed since this cause was argued and submitted; and, owing to the importance of the questions involved and the diversity of views entertained, we have been unable to announce a decision until the present time.
Even now I can only give a very brief statement of my views, and although a majority of the court concur in the conclusion, it is upon grounds not altogether shared in by those of us who agree in the final disposition to be made of the cause.
The bill is filed to restrain the Commissioners of the District from selling the real estate of the complainant in pay *564 ment of a certificate of indebtedness issued by the late board of public works, which is claimed to be a lien upon the property of the complainant for special-impro vément taxes. The complainant alleges that' the certificate was issued without the authority of law, and constitutes no lien upon his real estate. He states various irregularities in estimating the cost of making the improvement, in making the assessment, and in advertising the sale. He charges that large sums were computed which did not constitute any part of the cost, and that property liable to taxation was not included in the assessment, for the reason that it belonged to religious institutions, and some of it to the District of Columbia ; and he further alleges that the entire cost of the improvement has been assessed to and collected from the United States Government. I will, however, confine my observations entirely to the legality of the certificate in connection with the alleged payment of the work by the General Government.
• In the case of Harlcness vs. The District, 1 MacA., 121, we decided that as a court of equity we would not interfere by injunction to restrain the collection of a tax upon the mere allegation that the tax is illegal or void, and the Supreme Court of the United States has so often decided the same way, that the principle may now be considered settled law. This rule, however, has its exceptions; and whenever the enforcement of the tax would lead to multiplicity of suits, or irreparable injury, or throw a cloud upon the title to real estate, equity will interpose its preventive remedies. It is not my intention to infringe upon this principle in the present case, but to adjudicate within its limitations. We have not yet passed upon the validity of these certificates, although they have been argued before us many times.. In the case just referred to, we expressly declined to do so where an application was made for a preliminary injunction to prevent the certificates from being issued. The Government was then proceéding to enforce the collection of its revenue. But these taxes have been anticipated by the sale of the certificates, and the District cannot now be embarrassed in the speedy collection of its taxes. The question of-public policy no longer exists, and if it be true that the costs of the improvement have also *565 been collected from the Government of the United States, the sale of the property cannot take place without casting a cloud upon the title for which the complainant would have no remedy at law. Under these circumstances I think the rule which prevents a court of equity from restraining the collection of an erroneous tax is not applicable. The special circumstances exist which would authorize us to interpose for the purpose of preventing a cloud upon the plaintiff’s title.
The only authority for issuing the special-improvement certificates is found in the act of the legislative assembly approved August 10,1871, sess. 1, 31. The 3d section provides that thirty days after the assessment, if the tax is not paid, the board of public works shall issue certificates of indebtedness against the property assessed, which shall bear interest, and shall remain a lien upon the property: and if the assessment shall not be paid within one year, the board shall proceed to sell the property on the application of the holder .of the certificate. But it is contended that the legislative assembly had no authority to authorize the board of public .works to issue such certificates or to declare them a lien upon real estate, and that, therefore, the act is null and void in this respect. To determine this question, a reference to the thirty-seventh section of the act of Congress approved February 21, 1871, organizing a government for this District, becomes necessary. That section provides that the board shall have power “to disburse upon their warrant all moneys appropriated by the United States, or the District of Columbia, or collected from property-holders in pursuance of law, for the improvement of streets, avenues, alleys, and sewers, and roads and bridges, and shall assess, in such manner as shall be prescribed by laic, upon the property adjoining and to be especially benefited by the improvements authorized by law and to be made by them, a reasonable proportion of the cost of the improvement, not exceeding one-third of such cost, which sum shall be collected as all other taxes are collected.''’
It is here distinctly declared that the board shall assess, in such manner as shall be prescribed by law, upon property benefited by improvements, an amount not to exceed one-third of the cost, and here their express powers end. They have nothing but the function of assessment, unless it is to dis *566 burse upon their warrant all money appropriated by the United States, or the District, or collected from the property-holders in pursuance of law for the improvements. It may well be doubted whether a valid assessment was ever made. The legislative assembly undertook to “prescribe by lato,” in the act of August 10, a mode of assessing' for special improvements, and. they enact that a statement of the cost thereof shall be prepared by the board of public works, and that an assessment based upon said statement shall be made as provided for in the thirty-seventh section of the organic act. But no mode is provided for making the assessment itself. Whether it shall be according to the front foot, or upon the superfices of the lots, or according to their different values, are matters left entirely to the discretion of the board, instead of being “prescribed by law.” The usual grounds and formalities of assessment and collection are not prescribed in accordance with the provisions of any law. Even if the legislative assembly had the power of delegating the mode of assessing to the board under its general power of legislation, it could not do so in regard to the special taxes, because the organic act requires explicitly that the mode of assessment shall be prescribed by settled law. It cannot well be contended that the members of the board of public works could assess according to their own will and pleasure, for the organic act was undoubtedly framed in this respect to prevent the abuse which might result from such arbitrary methods of imposing burdens upon the property of citizens.
We have seen that the thirty-seventh section of the act for the District government requires that a reasonable proportion of the cost of improvement, not exceeding one-third of the cost of the improvement, is to be assessed on the adjoining property, “ which sum shall be collected as all other taxes are collected.” How, then, are other taxes collected, by whom and under what accountability, and who is responsible for their safe-keeping ? Certainly not the board of public works. We know who is the accountable officer in the collection of all other taxes and the process by which he performs his duty, and that issuing certificates and selling them in the market in anticipation of the taxes constitute no steps in the process of collection. By the section of the charter already *567 referred to, the special assessments are to he collected in the same way, and all laws in existence within the District prescribing the duties of officers intrusted with this important duty cover and protect the costs of improvements. 'But the assembly, in disregard of all this, have prescribed an entirely different manner of collecting them, and have declared that if they are not paid within thirty days, the said board of public works shall immediately afterward issue these certificates, bearing interest, which are to remain a lien upon the property, and for which it may be sold at the end of a year by the board upon the application of the holder. Now, there is no law prescribing that “all other taxes are collected” in this manner. There is no law which authorizes in regard to all other taxes a certificate as a step in the process of collection, and which is to bind the property and become transferable. The act of the assembly provides a special and summary manner of enforcing the payment of these taxes wholly unknown to the law of the District, and therefore in direct violation of the act of Congress. To that extent it is therefore null and void, as are all the proceedings under it. But it is said that Congress has recognized the validity of this act of the assembly; and we are referred to the act of Congress abolishing the District government, the second section •of which provides that nothing therein contained shall affect any provisions of law authorizing or requiring a deposit of •certificates of assessment with the sinking-fund commissioners of the District. This is not to be considered as a ratification judicially or by Congress of the action of the assembly in regard to these certificates. The same act provides that.ataxes lawfully assessed shall be collected, and the power of anticipating the taxes by a sale of the evidence thereof is expressly prohibited. It cannot, I think, bo successfully maintained that an act of Congress which prohibits these certificates, and declares that only taxes which have been lawfully assessed can be collected, is a ratification of the assembly legislation, so as to take away the right of the tax-payer to defend his property from sale upon a lien which had been previously void. The other alleged ratifications by acts of Congress are mere implications, and are liable to the same disposal.
*568 Upon the grounds thus briefly stated I come to the conclusion that the certificate sought to be enforced against the property of complainant is without authority of law; and yet if the District authorities were seeking the immediate collection of the taxes as a means of carrying on the government we would, Í think, be compelled to refuse the remedy sought in this case.
In the case of Harkness vs. The District, already referred to, the court say: “ In the leading cases where the attempt has been been made to enjoin taxing officers, the courts have declared that there are reasons of public justice and policy why a court of chancery should not interfere to suspend the collection of public revenue unless in exceptional cases. These declarations have nearly all been made in cases of special assessments, and aré founded upon the necessity of a speedy collection of the taxes as the means of carrying on government. These considerations have deterred courts of equity from subjecting the collection of public revenue to the hazard and delay of protracted chancery litigation.” This grave question of public policy does not, however, apply to the case at bar, for the certificate in controversy has been sold to and is now the property of the First National Bank of New York, and the sale sought to be restrained is for the benefit and at the instance of that institution. The government has received all it ever will in exchange for that evidence of the tax, and not one dollar to be realized from the sale of this property .could be used as the means of public revenue. It is a mere contest between individuals, in which the public have no direct interest. The bank, perhaps, on a collateral proceeding at law, has a claim against the District, but upon that we are not at present called upon to pronounce an opinion and do not. I am of opinion that the jurisdiction of this court, under these circumstances, will interfere as in other cases of litigation involving only the rights and interests of private persons. The bank undoubtedly purchased the certificate as a profitable investment, and subject to such disadvantage as tax-titles usually inherit, and, seeking to enforce a void instrument, it should not be permitted to cast a cloud upon the title to the property of the, complainant.
*569 It is also said that complainant should at least pay what is due in order to obtain relief from the whole tax. In tax cases the Supreme Court of the United States has quite recently (Taylor vs. Secor etal.,2 Otto, 575) laid down this doctrine as founded in the first principles of equity jurisdiction. But in the case before us it is alleged that the whole costs of the improvements ón New York avenue have been collected from the United States. The Commissioners, in their answer, say:
“That First Auditor’s account, August 2, 1872, shows congressional appropriation as $192,881.12 for work in front of United States property, of which $19,881.05 is for New York avenue between Ninth and Fifteenth streets, of which $2,271.22 was credited to H street and $2,670.40 to I street; the balance of $14,939.45 to New York avenue.
“Seven months afterward, March 4,1873, a further appropriation was made by the United States, of which there was charged on áccount of New York avenue $137,572.80, deducting former appropriations.
“Whether or not these two appropriations relieved said property of complainant from the lien credited by the assess-, ment previousiy made and certificate previously issued and in the hands of a third party who had purchased the same, is'a question of law, which we submit for the decision of the court.”
Now, here it is admitted that an appropriation considerably exceeding the whole expenditure for the improvements on New York avenue has been paid to the District. This would undoubtedly inure to the benefit of persons owning the adjoining lots. The payment of a tax to the proper officers extinguishes the indebtedness, and relieves the property upon which it is assessed; and it is the duty of the government to make the proper application, so as to redeem any evidence they have given of the indebtedness. The First National Bank should, therefore, present their certificate to the District. So far as the lot is concerned, the lien no longer exists.
To allow the land to be sold for a tax that has been collected, or where the public policy of allowing the government to collect its revenue is not involved upon a void tax, would be to cast a cloud upon the title of real estate; and *570 tyiis is the very casé in which all the authorities agree that the chancery jurisdiction may be invoked.
I regret extremely that my other engagements have not left me sufficient opportunity to fortify these views with a reference to appropriate cases.
The prayer of the bill must be allowed, and the injunction be made permanent.